UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| PATRIOT COAL CORPORATION, et. al. ) | Case No. 12-51502-659 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | |
| PATRIOT COAL CORPORATION, ) | **Adversary No. 13-4067-659** |
| HERITAGE COAL COMPANY, LLC, ) | |
| ) | **PUBLISHED** |
| Plaintiffs, ) | |
| ) | |
| -v- ) | |
| ) | |
| PEABODY HOLDING COMPANY, LLC, and ) | |
| PEABODY ENERGY CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The matters before the Court are the Complaint filed by Debtors Patriot Coal Corporation, *et al.,* Notice and Plaintiffs' Motion for Summary Judgment, Defendants' Motion to Dismiss, Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Plaintiffs' Opposition to Defendants' Motion to Dismiss. A hearing was held on April 29, 2012 at which counsel for Plaintiffs and Defendants appeared and oral argument was presented. The Court also granted leave for brief oral argument to be presented by counsel for the United Mine Workers of America. The matter was taken under submission. Upon consideration of the record as a whole, the Court rules as follows.

Debtor Patriot Coal Corporation (hereinafter "Patriot") is one of the largest coal-producing enterprises in the United States. Debtor Heritage Coal Company, formerly known as Peabody Coal Company, LLC (hereinafter "Heritage") is a Debtor-subsidiary of Patriot. Debtor Eastern Associated Coal, LLC (hereinafter "Eastern Associated") is also a Debtor-subsidiary of Patriot. Heritage, Eastern Associated and Patriot are former subsidiaries of Defendant Peabody Energy Corporation (hereinafter "Peabody Energy"). Defendant Peabody Holding Company, LLC, (hereinafter

"Peabody Holding") is an indirect wholly owned subsidiary of Peabody Energy.

Prior to October 2007, Peabody Energy had an ownership interest in certain subsidiaries now owned by Patriot, including Heritage and Eastern Associated, which owned numerous mining operations in the Illinois Basin and Appalachia regions. Those mining operations were heavily staffed with miners that were and continue to be represented by the United Mine Workers of America (hereinafter "UMWA"). Many of those miners retired from those Illinois Basin and Appalachia operations, and pursuant to individual employer plans which were created in accordance with UMWA labor agreements, certain former subsidiaries of Peabody Energy – including Heritage and Eastern Associated – were liable for the provision of pension and healthcare benefits to their retirees, as will be further discussed below.

The Bituminous Coal Operators' Association (hereinafter the "BCOA") is a multiemployer bargaining association formed by coal mine operators on July 22, 1950. Its sole purpose is to bargain with the UMWA on behalf of its coal industry employer members.

The provision of pension and healthcare benefits has consumed negotiations between coal mine operators and the UMWA for the better part of the 20th century, and not surprisingly, this plight has continued into the 21st century. Following a nation-wide strike in 1946, President Truman issued an Executive Order which directed Julius Krug, then Secretary of the Interior, to seize virtually all bituminous coal mines in the United States and to negotiate "appropriate changes in the terms and conditions of employment of miners with the UMWA." 11 Fed. Reg. 5593 (1946). From these negotiations between Secretary Krug and Mr. John L. Lewis, then-president of the UMWA, the Krug-Lewis Agreement was produced.

Pursuant to the Krug-Lewis Agreement, the previously seized coal mines reverted to private control and the National Bituminous Coal Wage Agreement of 1947 (hereinafter "1947 NCBWA") was created. The 1947 NBCWA set out the terms and conditions of employment for coal miners employed by members of the BCOA and companies that sign "Me Too" agreements with the

UMWA. A "Me Too" Agreement is an agreement whereby an employer who is not a member of the BCOA agrees with the UMWA to be bound by the terms of the NBCWA. Every few years, the UMWA and BCOA renegotiate the terms of the NBCWA. Each renegotiated agreement has an expiration date.

The 2011 NBCWA is the most current negotiated agreement which will expire on December 31, 2016. The 2007 NBCWA preceded the 2011 NBCWA. Heritage and Eastern Associated have signed "Me Too" Agreements and incorporated the 2011 NBCWA, particularly Article XX of the 2011 NBCWA, into their Individual Employer Plans. Article XX of the NBCWA defines and makes provision for pension, health and other benefits for former employees of the BCOA members that are NBCWA and "Me Too" Agreement signatories. Heritage and Eastern Associated were therefore bound to each maintain an Individual Employer Plan which provided for the provision of pension, health and other benefits to its UMWA-represented retirees. Both Heritage and Eastern Associated have maintained Individual Employer Plans as well as the resulting liabilities. This changed for Heritage around October of 2007.

Prior to October of 2007, it was contemplated that Patriot and certain subsidiaries, including Heritage and Eastern Associated, would be spun-off from Peabody Energy. In an "Acknowledgement and Assent" entered into on or about August 13, 2007 between Peabody Holding, the UMWA and for limited purposes Heritage, Peabody Holding stated its intent to be primarily obligated to pay for benefits of Heritage's retirees and those retirees' eligible dependents (hereinafter the "Assumed Retirees"), under the terms of an employee welfare plan maintained by Heritage pursuant to Article XX of the Heritage Individual Employer Plan. Pls.' Ex. B, § A.2. The Acknowledgement and Assent specifically states that the terms of such assumption will be memorialized in a separate document, the NBCWA Liability Assumption Agreement which will not: I) make Peabody Holding a party to any collective bargaining agreement with the UMWA; ii) create a labor law relationship between Peabody Holding and the UMWA; nor will it iii) create any right of action by the UMWA or its retirees

against Peabody Holding for benefits under the Heritage Individual Employer Plan. See Pls.' Ex. B, § B.2.

On or about October 22, 2007, before the spin-off was complete, an NBCWA Individual Employer Plan Liabilities Assumption Agreement (hereinafter "Assumption Agreement") was entered between Peabody Holding, Patriot, Peabody Energy and Heritage. The Assumption Agreement is governed by Delaware law. Pls.' Ex. A., § 19. The following comprises the pertinent contents of the Assumption Agreement:

> Recitals
> ...
> WHEREAS, [Heritage] has an obligation to provide retiree healthcare pursuant to its "me too" labor contract which incorporates by reference Article XX of the NBCWA; and
>
> WHEREAS, the parties desire that [Heritage] continue to provide the retiree healthcare required by Article XX of the NBCWA (or any successor [Heritage] labor contract);
>
> WHEREAS, [Peabody Holding] has agreed to assume the liabilities of [Heritage] for provision of healthcare pursuant to Article XX of the NBCWA (or any successor [Heritage] labor contract) to certain retirees and their eligible dependents to the extent expressly set forth in this Agreement; and
>
> WHEREAS, contemporaneously herewith [Peabody Holding] and Patriot have entered an Administrative Service Agreement pursuant to which Patriot will take certain actions necessary and appropriate for the administration of any NBCWA Individual Employer Plans (as defined below) and delivery of benefits constituting NBCWA Individual Employer Plan Liabilities (as defined below).
> ...
> Section 1. <u>Defined Terms.</u>
> ...
> (b) The term "NBCWA" shall mean the National Bituminous Coal Wage Agreement of 2007, as may be amended, supplemented or replaced from time to time (subject to the proviso of the definition of "NBCWA Individual Employer Plan Liabilities").
> (c) The term "NBCWA Individual Employer Plan" shall mean a plan for the provision of healthcare benefits to retirees of [Heritage] and their eligible dependents maintained by [Heritage] pursuant to Article XX of the NBCWA.
> (d) The term "NBCWA Individual Employer Plan Liabilities" shall mean amounts [Heritage] pays for benefits to those retirees of

> [Heritage] ... and such retirees' eligible dependents, under the terms of the NBCWA Individual Employer Plan, *provided* that such retirees had vested in a right to receive retiree health benefits under the NBCWA Individual Employer Plan as of December 31, 2006 ... Changes to benefit levels, cost containment programs, plan design or other such modifications contained in [Heritage]'s future UMWA labor agreements that are applicable to the retirees and eligible dependents subject to this Agreement shall be included for purposes of the definition of "NBCWA Individual Employer Plan Liabilities"; *provided* that, for purposes of any successor [Heritage] labor contract, "NBCWA Individual Employer Plan Liabilities" shall be based on benefits that are the lessor of (I) benefits provided in any future UMWA labor agreement with [Eastern Associated] ... and (ii) benefits provided in any future NBCWA labor agreement or any successor labor agreement and offered to [Eastern Associated] or any successor of [Eastern Associated], or which [Eastern Associated] or any successor of [Eastern Associated] had the opportunity to sign.
>
> Section 2. [Peabody Holding] Assumption of Liabilities
> ...
> (b) Patriot shall instruct each third party administrator to deliver each invoice with respect to the NBCWA Individual Employer Plan Liabilities directly to [Peabody Holding] in accordance with such third party administrator's normal billing cycle...

Pls.' Ex. A (emphasis original). Section 4 provides that if Patriot or any of its subsidiaries is sued by the UMWA or a former employee under the NBCWA, Patriot shall notify Peabody Holding, and neither Patriot nor Heritage may settle any such dispute without the consent of Peabody Holding, otherwise, Peabody Holding will not be obligated to reimburse Patriot or Heritage for the settlement costs. Pls.' Ex. A, § 4. Section 5 allows Peabody Holding the right to pursue a claim or defense in the event that Patriot or Heritage fail or refuse to pursue such claim or defense. Pls.' Ex. A, § 5. Section 6 allows Peabody Holding to inspect, copy or audit Patriot's books and records with respect to payment of the NBCWA Individual Employer Plan Liabilities. Pls.' Ex. A, §6. And, Section 8 provides that:

> [Peabody Holding] agrees that it shall indemnify, defend and hold harmless each of Patriot, [Heritage] and their respective affiliates and the successors, assigns, ... from and against any claims, actions or causes of action, damages, penalties, fines, assessments ... principally resulting from the failure of [Peabody Holding] to timely

-5-

pay and discharge the NBCWA Individual Employer Plan Liabilities.

Pls.' Ex. A, § 8. Peabody Energy has guaranteed Peabody Holding's payment of the Heritage retiree pension and health benefits. Pls.' Ex. A, § 7.

On October 31, 2007, Peabody Energy completed the spin-off and in essence, consolidated its Illinois Basin and Appalachia coal operations with UMWA-represented labor within Patriot. Pls.' Ex. E at 3. As previously mentioned, Heritage and Eastern Associated were also included in the spin-off and became subsidiaries of Patriot. By separate agreement, Peabody Holding assumed liabilities associated with retiree healthcare benefits under the Coal Industry Retiree Health Benefit Act of 1992 (hereinafter the "Coal Act"). Pls.' Ex. G. Also by separate agreement, Peabody Holding assumed the retiree healthcare liabilities of certain former salaried employees of Heritage. Pls.' Ex. H.

On July 9, 2012, Patriot and a number of its subsidiaries including Heritage and Eastern Associated (hereinafter collectively the "Plaintiffs") filed Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code. Those cases are being jointly administered. Plaintiffs are each debtors in possession. On March 14, 2013, Plaintiffs filed their Motion to Reject Collective Bargaining Agreements and to Modify Retiree Benefits Pursuant to 11 U.S.C. §§ 1113, 1114 of the Bankruptcy Code (hereinafter the "1113/1114 Motion"). The most recent 1113/1114 Proposals contemplated in the Court's adjudication of the 1113/1114 Motion involves the deletion of Article XX from the Heritage Individual Employer Plan as well as the Eastern Associated Individual Employer Plan unless, among other stipulations, Plaintiffs are given confirmation in writing that their current obligation to the UMWA 1974 Pension Plan to contribute $5.50 per UMWA hour worked – as set out in Article XX – will not increase on or after January 1, 2017. If such confirmation is given, Article XX will not be eliminated from either the Heritage Individual Employer Plan or the Eastern Associated Individual Employer Plan, however, if such confirmation is not given, then Article XX will be eliminated. Plaintiffs filed this Complaint to obtain a determination of whether the Assumed

Retirees should be included in Plaintiffs' Section 1114 relief, and Plaintiffs now seek summary judgment on the Complaint.

Plaintiffs argue first that Peabody Holding is primarily obligated for the pension and healthcare benefits of the Assumed Retirees in that Peabody Holding assumed all liabilities to finance the pension and retiree healthcare for which Patriot, on behalf of Heritage, merely acts as Peabody Holding's agent. Plaintiffs next argue that Plaintiffs seek to exclude the Assumed Retirees from any Section 1114 relief, therefore, there will be no changes or modifications that are applicable to the Assumed Retirees such that any Section 1114 relief would change Peabody Holding or Peabody Energy's responsibility to fund those costs. Alternatively, Plaintiffs argue that any result of the Section 1113/1114 process or the 1113/1114 Motion is not a successor labor contract within the intended meaning of the Assumption Agreement, therefore, Peabody Holding's obligation remains. Finally, Plaintiffs argue that Peabody Holding should not benefit from any modification caused by the Court's adjudication of the 1113/1114 Motion, specifically, Peabody Holding should not inherit a windfall if Article XX is deleted nor should Peabody Holding be permitted to reduce its liability to match the corresponding liability for the benefits that Eastern Associated is obligated to provide for its retirees because Plaintiffs' Section 1113/1114 relief also contemplates deletion of Article XX from the Eastern Associated Individual Employer Plan once Plaintiffs implement the relief requested in the 1113/1114 Motion.

Peabody Holding and Peabody Energy (hereinafter collectively "Defendants") argue first that this Court lacks subject matter jurisdiction because the Complaint does not constitute an actual controversy in that Defendants believe Plaintiffs are seeking an advisory opinion. Defendants argue that the issue is not ripe today, but rather it contemplates potential conflicts which may occur in the future. Defendants argue that Plaintiffs might not obtain the relief they seek in the 1113/1114 Motion, or Plaintiffs may obtain relief under one Section but not the other; each scenario has diverging implications. Moreover, Defendants posit that Plaintiffs may settle the matter concerning

the 1113/1114 Motion with the UMWA prior to Plaintiffs' implementation of the relief they seek authority to implement from this Court, and the terms of any such settlement are not yet known. Finally, Defendants argue that in any event, any order of this Court pursuant to Sections 1113/1114 may only become a labor contract when Plaintiffs' Chapter 11 plan of reorganization is confirmed, an eventuality which further supports Defendants' notion that the Court today lacks subject matter jurisdiction. Plaintiffs respond that resolution of this matter determines the scope of the Section 1114 relief, therefore, the matter is an actual controversy today and is ripe for judicial determination.

As to the substance of the Complaint, Defendants argue that Peabody Holding is only obligated to fund the healthcare benefits that Heritage is obligated to pay. Therefore Defendants argue that if Heritage's obligation pursuant to the adoption of Article XX in the Heritage Individual Employer Plan is terminated through the deletion of Article XX, whether by court order or otherwise, Peabody Holding will no longer have an obligation to fund. Peabody Holding next argues that any relief that Heritage might obtain under Section 1114 to reduce or terminate its obligation to provide pension and healthcare benefits to the Assumed Retirees would constitute or result in a future labor agreement and thereby affect Peabody Holdings' commensurate funding obligations. Peabody Holding last argues that in any event, the Assumption Agreement contains a most favored nations clause or Eastern Proviso which provides that Peabody Holding's obligation to fund the pension and healthcare benefits provided by Heritage cannot exceed the obligations of Eastern Associated to do the same, and Plaintiffs seek to delete Article XX from Eastern Associated's Individual Employer Plan which will thereby eliminate Eastern Associated's corresponding obligations.

## **JURISDICTION**

This Court has jurisdiction of this matter pursuant 28 U.S.C. §§ 151, 157 and 1334 (2013) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (2013). Venue is proper in this District under 28 U.S.C. § 1409(a) (2013).

**CONCLUSIONS OF LAW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable under Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed. 2d. 265, 273 (1986). The moving party has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Id.* at 323. Once the movant carries its burden, the burden shifts to the non-movant. *Id.* In ruling on a motion for summary judgment, a court must view all facts in a light most favorable to the non-moving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan,* 864 F.2d 622, 624 (8th Cir. 1989)(citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1224-25 (8th Cir. 1983)).

Plaintiffs assert that they are entitled to summary judgement in that this Court should grant the relief requested in the Complaint and declare that a modification of the benefits of retirees of Heritage or Eastern Associated under Section 1114 does not relieve Peabody Holding of its obligation to pay for pension and healthcare benefits of the Assumed Retirees as currently provided pursuant to Heritage's 2011 Individual Employer Plan and the Assumption Agreement. Specifically, Plaintiffs seek a declaration concerning the operation of Section 1(d) of the Assumption Agreement.

Evaluation of this question must begin with the Assumption Agreement. The Assumption Agreement is governed by Delaware Law. Pls.' Ex. A, § 19. This however is immaterial because no party alleges that the Assumption Agreement is ambiguous, as such, the question rests with the

operation of the Assumption Agreement's unambiguous terms.[1]  Therefore, here the Court is presented with a question of law – the interpretation of an unambiguous contract to which this Court must accord its "plain meaning and full effect." *See Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co.,* 477 F,3d 583, 589 (8th Cir. 2007) (citing *Westfield Ins. Group v. J.P.'s Wharf, Ltd.,* 859 A.2d 74, 76 (Del. 2004) (applying Delaware law)); see also *Weitz Co. v. MH Washington,* 631 F.3d 510, 524 (8th Cir. 2011).  A court should accord the plain and ordinary meaning of an unambiguous contract. *Alta Berkeley VI C.V. v. Omneon, Inc.,* 41 A.3d 381, 385 (Del. 2012) (citing *City Investing Co. Liq. Trust v. Cont'l Cas. Co.,* 624 A.2d 1191, 1198 (Del. 1993)).

What is the plain and ordinary meaning of the Assumption Agreement?  To answer this question, the Court must first determine whether the obligation to pay the Assumed Retiree's healthcare costs lies with Heritage and is funded by Peabody Holding, or, whether it lies with Peabody Holding, and Heritage merely acts as Peabody Holding's agent.  The fifth recital states:

> WHEREAS, [Peabody Holding] has agreed to *assume the liabilities of [Heritage]* for provision of healthcare pursuant to Article XX of the NBCWA (or any successor [Heritage] labor contract) to certain retirees and their eligible dependents to the extent expressly set forth in this [Assumption] Agreement...

Pls.' Ex. A (emphasis added).  So, what does the Assumption Agreement expressly set forth? Section 1(b) states that "[t]he term "NBCWA" shall mean the National Bituminous Coal Wage Agreement of 2007, as may be amended, supplemented or replaced from time to time..." Pls.' Ex. A, § 1(b). Section 1(c) states that "[t]he term "NBCWA Individual Employer Plan" shall mean a plan for the provision of healthcare benefits to retirees of [Heritage] and their eligible dependents maintained by [Heritage] pursuant to Article XX of the NBCWA. Pls.' Ex. A, § 1(c).  And most

---

[1] The Court acknowledges Plaintiffs' argument that Peabody Energy was the principal drafter of the Assumption Agreement and therefore the Assumption Agreement should be construed against the drafter.  The Court easily dispenses of this argument because in effect, the Assumption Agreement is unambiguous and the only matter that remains is this Court's instruction of the objective interpretation of the contract.  Moreover, the record reflects that all parties involved in the drafting of the Assumption Agreement were represented by sophisticated counsel – a fact that Debtors' counsel surely does not dispute.

pertinently, Section 1(d) states that:

> [C]hanges to benefit levels ... plan design or other such modifications contained in [Heritage]'s future UMWA labor agreements that are applicable to the retirees and eligible dependents subject to this [Assumption] Agreement shall be included for purposes of the definition of "NBCWA Individual Employer Plan Liabilities."

Pls.' Ex. A, § 1(d). Section 2(a) of the Assumption Agreement states that Peabody Holding agrees to pay the amounts due and Section 2(b) states that Patriot will instruct the relevant party to deliver the invoices with respect to the healthcare liabilities to Peabody Holding for payment. Pls.' Ex. A, § 2. Section 4 provides that if Patriot or any of its subsidiaries is sued by the UMWA or a former employee under the NBCWA regarding the liabilities that arise from the Heritage Individual Employer Plan, Patriot shall notify Peabody Holding, and neither Patriot nor Heritage may settle any such dispute without the consent of Peabody Holding, otherwise, Peabody Holding will not be obligated to reimburse Patriot or Heritage for the settlement costs. Pls.' Ex. A, § 4. Section 5 allows Peabody Holding the right to pursue a claim or defense in the event that Patriot or Heritage fail or refuse to do so. Pls.' Ex. A, § 5. Section 6 allows Peabody Holding to inspect, copy or audit Patriot's books and records with respect to payment of the pension and healthcare benefit liabilities. Pls.' Ex. A, § 6. And, Section 8 provides that:

> [Peabody Holding] agrees that it shall indemnify, defend and hold harmless each of Patriot, [Heritage] and their respective affiliates and the successors, assigns, ... from and against any claims, actions or causes of action, damages, penalties, fines, assessments ... principally resulting from the failure of [Peabody Holding] to timely pay and discharge the [pension and healthcare liabilities].

Pls.' Ex. A, § 8.

The sum of the above leaves this Court with no doubt that under the Assumption Agreement, all liabilities remained with Heritage, and Peabody Holding's obligation was to fund those liabilities. Most strikingly, as a matter of basic contract law, if the parties intended the liabilities to lie with Peabody Holding, there would have been no need for Section 8 of the

Assumption Agreement, the indemnification clause. Moreover, if Patriot or Heritage was merely acting as Peabody Holding's agent, there would be no need for Section 6 of the Assumption Agreement which expressly provides that Peabody Holding has the right to inspect, copy or audit Patriot's books and records regarding payment of the pension and health care benefit liabilities. Those books and records would indeed be Peabody Holding's books and records that are merely maintained by Patriot or Heritage.  Moreover, the liabilities are derived from Heritage's Individual Employer Plan over which Peabody Holding has no control.   Rather, Peabody Holding's only shelter concerning the Heritage Individual Employer Plan is as follows: irrespective of what the Heritage Individual Employer Plan actually provides, Peabody Holding cannot be made to fund benefits that  exceed the benefits that Eastern Associated is contractually obligated to fund.  The culmination of the above therefore dictates that the liabilities remained with Heritage.

The next question is whether the relief requested in the 1113/1114 Motion includes the Assumed Retirees?  This must be the next question asked because the second sentence of Section 1(d) of the Assumption Agreement says: "[c]hanges to benefit levels ... plan design or other such modifications contained in [Heritage]'s future UMWA labor agreements **that are applicable to the retirees and eligible dependents** subject to this [Assumption] Agreement..."  Pls.' Ex. A, § 1(d) (emphasis added).  Here, it is insufficient that Plaintiffs state that they wish to exclude the Assumed Retirees because of course, manifestation of Plaintiffs' wishes are exemplified in the 1113/1114 Proposals, and one must look at the 1113/1114 Proposals in relation to the operative language of the Assumption Agreement.

Simultaneously before the Court is Plaintiffs' 1113/1114 Motion, which includes Plaintiffs' Fifth 1113 Proposal made on April 23, 2013.  Therein, Plaintiffs propose to delete Article XX in its entirety, provided, however, among other things, that the obligation to contribute $5.50 per UMWA hour worked to the UMWA 1974 Pension Plan will not increase on or about January 1, 2017.  This obligation to fund the UMWA 1974 Pension Plan derives from Article XX.  If the decision makers

of the UMWA 1974 Pension Plan agree to the stipulations of the Fifth 1113 Proposal, Plaintiffs will not delete Article XX from either the Heritage or Eastern Associated Individual Employer Plans. If not, based on the Fifth 1113 Proposal, Plaintiffs will delete Article XX from <u>both</u> the Heritage and Eastern Associated Individual Employer Plans.

The pension and healthcare benefits liabilities for the Assumed Retirees that Peabody Holding funds derive from the Heritage Individual Employer Plan which presently adopts Article XX and thus, Heritage incurs liabilities which are funded by Peabody Holding based on Article XX. By separate order entered simultaneously, this Court has concluded that Plaintiffs have met their burden and has granted certain Plaintiffs authority to implement the Fifth 1113 Proposal, as well as the Fifth 1114 Proposal. This means, if the status quo of today remains, as early as June 1, 2013, Article XX of both the Heritage and Eastern Associated Individual Employer Plans will be deleted, and as early as July 1, 2013, a Trust which will operate as a Voluntary Employee Beneficiary Association (hereinafter "VEBA") can be established pursuant to the Section 1114 relief, to which Heritage and Eastern Associated's obligation to provide pension and health care benefits will be transferred. Therefore, if Heritage no longer has an obligation to pay the healthcare benefits for the Assumed Retirees which derives from Article XX, Peabody Holding consequently has no obligation to fund a non-existent liability. Further, Peabody Holding's obligation to pay the pension and healthcare benefits of the Assumed Retirees is also measured against Eastern Associated's obligations to pay its retiree pension and healthcare benefits. Thus, Peabody Holding cannot be made to pay for benefits that are not commensurate with the benefits that Eastern Associated must pay, or, what Eastern Associated has the opportunity to pay. Pls.' Ex. A, § 1(d). This is the contract that the parties, each represented by sophisticated counsel, bargained for.

In any event, the relief requested under Section 1114 contemplates that Heritage's obligation to provide the Retiree Benefits will transferred to the VEBA. So too, Eastern Associated's obligations to provide the Retiree Benefits will be transferred to the VEBA. It is all a complicated

tapestry.

The Assumption Agreement uses the inconsistent language of "future UMWA labor agreements that are applicable to the retirees and eligible dependents" and "successor [Heritage] labor contract" and "successor labor agreement," all of which clearly refer to the same event, a new instrument that seeks to define Heritage's obligation for the healthcare benefits of the Assumed Retirees, which under the Assumption Agreement are to be funded by Peabody Holding when certain conditions are met. In granting the 1113/1114 Motion, the Heritage Individual Employer Plan can be rejected and this Court comfortably concludes that what will remain is a Court ordered labor agreement and/or contract that is applicable to the *retirees and their eligible dependents*, otherwise called the Assumed Retirees, within the meaning of the Assumption Agreement. This Court's Order concerning the 1113/1114 Motion therefore triggers the operative "successor Heritage labor contract" language of the Assumption Agreement. An alternative conclusion would yield an absurd result whereby despite several expressions that Peabody Holding is not directly obligated by any collective bargaining agreement (hereinafter "CBA"), for the purposes of the Assumed Retirees, Peabody Holding will become directly obligated by a CBA, the 2011 NBCWA. Or, despite the rejection of the Heritage Individual Employer Plan, deletion of Article XX and transfer of the obligation to provide Retiree Benefits to the VEBA, the Heritage Individual Plan will nonetheless remain intact as to the Assumed Retirees for purposes of sending the bill to Peabody Holding. Of course, it goes without saying that there is only one Heritage Individual Employer Plan which Plaintiffs must either assume or reject in its entirety, and Plaintiffs have requested to reject it.

Therefore, by all accounts – viewing all facts in the light most favorable to Defendants, there are no genuine issues of material fact and for the reasons stated herein, Plaintiffs are not entitled to judgment as a matter of law. By separate Order, Plaintiffs' Motion for Summary Judgment will


be denied, the Court will grant Summary Judgment for Defendants *sua sponte* and Defendants'

Motion to Dismiss will be denied as moot.

*Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge

DATED: May 29, 2013
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Peabody Holding Company, LLC
Peabody Plaza
701 Market St.
St. Louis, MO 63101-1826

Brad B. Erens
Jones Day
77 West Wacker
Chicago, IL 60601

David G. Heiman
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

Peabody Energy Corporation
Peabody Plaza
701 Market St.
St. Louis, MO 63101-1826

Patriot Coal Corporation
12312 Olive Boulevard
Suite 400
St. Louis, MO 63141

Elliot Moskowitz
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

Carl E. Black
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

Steven N. Cousins
Armstrong, Teasdale et al.
One Metropolitan Sq.
211 N. Broadway, Ste. 2600
St. Louis, MO 63102-2740

Robert W. Hamilton
Jones Day
325 John H. McConnell Blvd.
Columbus, OH 43215

John M. Newman, Jr.
Jones Day
901 Lakeside Avenue
Cleveland, OH 44114

Jonathan D Martin
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

Heritage Coal Company LLC
12312 Olive Boulevard, Suite 436
Saint Louis, MO 63141